IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN MOROZIN | : | CIVIL ACTION |
| v. | : | No. 18-2174 |
| PHILADELPHIA HOUSING AUTHORITY, et al. | : | |

## MEMORANDUM

**Juan R. Sánchez, C.J.**                                                                     **August 13, 2019**

      Plaintiff John Morozin, a white former officer of Defendant Philadelphia Housing Authority's (PHA) police department, brings this employment action alleging various forms of employment discrimination and constitutional injuries by the PHA and his former African-American supervisors, Defendants PHA Police Chief Branville Bard and PHA Vice President of Human Resources, Joanne Strauss. Defendants now move to dismiss portions of the Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure Rule 12(b)(6) and to strike two paragraphs pursuant to Federal Rule of Civil Procedure 12(f). The Court will grant Defendants' Rule 12(b)(6) motion because the challenged claims do not contain enough detail to establish Morozin's plausible right to relief, and the motion to strike pursuant to Rule 12(f) because the Amended Complaint contains two immaterial averments.

**FACTS**[1]

      Morozin, a white male, served as an officer in PHA's police department for an unspecified length of time (the Amended Complaint does not allege when his career with the department began

---

[1] The Court takes the facts from Morozin's Amended Complaint. The pleading's typographical errors make decrypting Morozin's vague, often narrative-less, allegations unnecessarily burdensome, and fall well below the Court's expectations. The Court expects better on any and all future filings.

or ended).[2] He was supervised by Branville Bard, the Police Chief and Public Safety Director of PHA's police department, and Joanne Strauss, PHA's Vice President of Human Relations.

Prior to Bard's hiring, Morozin and others reported perceived employment discrimination. Two individuals, Chief Mitchell and Officer Bullock, were allegedly terminated for their participation in these reports, and another, Inspector Eskridge, was demoted.[3] It is not clear when these allegedly retaliatory actions took place, the contours of the disparate treatment opposed, or the manner of the opposition other than Morozin, Marshall, Bullock, and Eskridge having "reported" it.

In March 2016, PHA hired Bard as the Police Chief and Public Safety Director of PHA's police department. At some point after his hiring, Bard conducted a physical inspection of PHA's police officers and is alleged to have said "more color was needed here." Am. Compl. ¶ 41. At some time prior to this, Bard worked as a lieutenant in the Philadelphia Police Department where he is alleged to have made a similar comment about "darkening things up" in that police department. *Id.* ¶ 44.[4] At some point following these comments, it is not clear how soon thereafter, Bard began using the disciplinary and hiring process to reduce the ranks of white officers in PHA's police department.

Also in March 2016, Bard initiated the termination of two white PHA Officers, Hampshire (a female) and Jablonski (a male), on the basis they violated departmental policy concerning

---

[2] Because Defendants only move for partial dismissal, the Court recounts only those allegations pertinent to the claims or theories at issue.

[3] When referring to persons other than those named as a party to the instant action, the Amended Complaint fails to consistently provide the names of these individuals, i.e., providing full names for some persons but not others. Therefore, for purposes of this Memorandum and ease of reference, the Court will only refer to these parties by their last name.

[4] Morozin does not allege having personally heard these comments.

vehicle pursuits. The Amended Complaint alleges the policy did not exist on the date of the alleged violation and the basis for Hampshire and Jablonski's respective terminations was "pretextual for discrimination," although the Amended Complaint does not identify the basis for the discrimination they allegedly suffered. Morozin claims he opposed Hampshire and Jablonski's termination but offers no further detail as to when or how.[5]

At some point (the Amended Complaint alleges no date), Bard initiated Morozin's termination from the department. The Amended Complaint alleges that Bard testified in the course of different litigation that Morozin was terminated for "union activity and a loss of confidence." Morozin alleges this rationale was pretext, and that he was really fired for opposing employment discrimination at PHA, engaging in First Amendment protected activity, and rejecting an alleged sexual advance made by Strauss.[6] Strauss is alleged to have implemented Morozin's termination.

Prior to his termination, Morozin alleges he made an internal complaint of employment discrimination and erroneous wage calculation, and non-payment of wages owed to him.[7] The substance of this complaint also "included acts of Bard and others at PHA." *Id.* ¶ 83. The Amended Complaint provides no additional detail about this alleged complaint, i.e., its substance, timing, or the manner in which it was made.

---

[5] Morozin alleges that, in 2016, he "testified under oath in a lawsuit" involving an African American officer and the vehicle pursuit policy. He claims his testimony was adverse to PHA and Bard. It is not clear whether this testimony was related to the terminations of Hampshire and Jablonski, specifically, or the testimony's context or content more generally.

[6] Morozin alleges to have filed an EEOC charge as to Strauss's sexual advance. *See* Am. Compl. ¶ 92. It is not clear whether this EEOC charge was incorporated in, or related to, Morozin's allegation that he filed an EEOC and Pennsylvania Human Relations Commission charge which referenced "the creation of a hostile work environment, harassment, sex or race discrimination and retaliation." *Id.* ¶ 152-53.

[7] Morozin vaguely alleges he was terminated in "close proximity" to his complaint. *See* Am. Compl. ¶ 91.

On May 23, 2018, Morozin filed the above-captioned case. On July 31, 2018, Defendants moved to dismiss. Morozin then filed an Amended Complaint on August 22, 2018. Defendants moved to dismiss the Amended Complaint for failure to state a claim and to strike Paragraphs 96 and 97 of the Amended Complaint on September 6, 2018. On November 8, 2018, the Court heard oral argument. The matter is now ripe for decision.

**DISCUSSION**

Defendants move to dismiss Counts I, III, and IV-VI of the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In evaluating a Rule 12(b)(6) motion, a court first must separate the legal and factual elements of the plaintiff's claims. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id*. at 210-11. The court must then "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id*. at 211 (quoting *Iqbal*, 556 U.S. at 679).

Count I asserts a violation of 42 U.S.C. § 1983, which creates a statutory mechanism for private individuals to vindicate their constitutional rights. *See* 42 U.S.C. § 1983; *Albright v. Oliver*, 510 U.S. 266, 271 (1994) ("Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." (internal quotations omitted)). In pertinent part, 42 U.S.C. § 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To prevail on his § 1983 claims, Morozin must produce evidence that "a person acting under color of state law engaged in conduct that violated a right protected by the Constitution or laws of the United States." *Morrow v. Balaski*, 719 F.3d 160, 165-66 (3d Cir. 2013). In evaluating a § 1983 claim, a court must first "identify the exact contours of the underlying right said to have been violated." *Id.* at 166 (quoting *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (en banc)). The Court must then "determine whether the plaintiff has alleged a deprivation of a constitutional right at all." *Id.*

To hold a municipality liable under § 1983 for the conduct of its employees, the plaintiff must satisfy the standard established in *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). Under *Monell*, a local government may be held liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," causes the violation of a constitutional right.[8] *Id.* at 694. A *Monell* claim requires a plaintiff to establish "(1) she possessed a constitutional right of which she was deprived; (2) the municipality had a policy; (3) the policy 'amounted to deliberate indifference' to the plaintiff's constitutional right; and (4) the policy was the 'moving force behind the constitutional violation.'" *Vargas v. City of Phila.*, 783 F.3d 962, 974 (3d Cir. 2015) (quoting

---

[8] "Policy is made when a 'decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990). A custom may be established based on practices of state officials that, while not authorized by law, are "'so permanent and well settled' as to virtually constitute law." *Id.* (quoting *Monell*, 436 U.S. at 690).

*City of Canton v. Harris*, 489 U.S. 378, 389-91 (1989)). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of its action." *Id.* (quoting *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997)).

Here, Morozin claims PHA had a policy or custom of retaliating against PHA employees for exercising their First Amendment rights to free speech. The parties dispute whether the Amended Complaint adequately pleads a deprivation of Morozin's right to free speech under the First Amendment. To demonstrate such a deprivation, a plaintiff must allege (A) that the activity in question is protected by the First Amendment, and (B) that the protected activity was a "substantial factor" in the alleged retaliatory action. *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006. Whether speech is protected is a question of law, but whether that speech motivated the retaliatory action is question of fact. *Hill*, F.3d at 241 (citing *Curinga v. City of Clairton*, 357 F.3d 305, 310 (3d Cir. 2004)).

> In this Circuit, a public employee's speech is protected by the First Amendment when
>
> (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made.

*Id.* at 241-42 (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)). Defendants argue the Amended Complaint fails to allege statements involving matters of public concern. Instead, they claim, Morozin's statements consisted of unactionable complaints about issues related to his work place. Morozin responds by asserting his speech is protected under *Lane v. Franks*, 573 U.S. 228 (2014), which held that a public employee's truthful testimony at trial was speech as a private citizen and, because its subject concerned corruption, touched on a matter of public concern.

6

The Court will grant Defendants' motion as to Count I. Although Morozin includes generalized descriptions of certain types of speech which might, theoretically, be protected, he has failed to allege adequate details about the statements forming the basis of his claim. *See* Am. Compl. ¶¶ 48, 52, 58-59, 75, 99, 126.[9] For example, he claims to have "opposed perceived employment discrimination at PHA," but does not identify what he said, when he said it, or to whom he spoke. *See, e.g.*, *id.* ¶ 58. He also claims to have joined in others' opposition to race discrimination, but, again, offers no detail as to this claim. *See, e.g.*, *id.* ¶ 59 ("The Plaintiff aided other PHA employees [opposed to] perceived employment discrimination, and he cooperated in PHA investigations of employment discrimination."). In light of this pervasive deficiency, the Court cannot adequately appraise whether the speech alleged is protected by the First Amendment, and, to the extent the Morozin invites the Court to determine whether speech in certain contexts is categorically protected, the Court declines given the fact-sensitive nature of a First Amendment inquiry. *See, e.g., De Ritis v. McGarrigle*, 861 F.3d 441, 453 (3d Cir. 2017) ("[T]he line between citizen speech and employee speech varies with each case's circumstances."); *Gorum v. Sessoms*, 561 F.3d 179, 187 (3d Cir. 2009) ("Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement.").

---

[9] In full, paragraph 126 states:

> Straus and Bard retaliated against Plaintiff for the association and for Plaintiff's protected activities. Viz, opposing employment discrimination; speaking out on a public matters, oppose employment discrimination by public entities and public employer, filing a charge of employment discrimination with the EEOC and PA Human Retaliations Commission; further, association with a Union, union members, and union activity; pursue arbitration for and on a grievance with PHA, which is a governmental entity., and make a complaint if errors in calculating wages and not paying for services provided to PHA.

Am. Compl. ¶ 126 (sic throughout).

7

Morozin comes closest to alleging protected speech with respect to his allegation that he provided deposition testimony in a lawsuit concerning a "[vehicle] pursuit by an African-American PHA officer." Am. Compl. ¶ 85. He alleges the testimony he provided was "truthful" and "adverse to PHA and Bard." *Id.* ¶ 86. While these allegations are likely sufficient to establish Morozin spoke as private citizen, *see Lane*, 573 U.S. at 238, they are too vague to establish the substance of his testimony touched upon a matter of public concern, *see De Ritis*, 861 F.3d at 455 ("Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement."). As a result, the Court finds Morozin has failed to adequately allege protected speech, which in turn precludes him from stating a claim for First Amendment retaliation as well as showing a deprivation of his rights for purposes of his *Monell* claim. Accordingly, the Court will dismiss Count I in its entirety.

The Court next turns to Counts III and VI, which allege employment discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII) and the Pennsylvania Human Relations Act (PHRA), respectively. Title VII is a federal civil rights statute prohibiting discrimination in employment "because of" an individual's "race, color, religion, sex, or national origin." 28 U.S.C. § 2000e-2. The PHRA similarly prohibits discrimination in employment "because of the race, color, religious creed, ancestry, age, sex, national origin or non-job-related handicap or disability or the use of a guide dog or support animal." 43 P.S. § 955(a). Defendants seek to dismiss each Count to the extent they allege a hostile work environment claim on the grounds that Morozin has failed to allege severe and pervasive harassment sufficient to alter the

terms and conditions of his employment.[10] Because the Court agrees, it will grant the motion as to both counts.[11]

Harassment based on a protected characteristic is actionable when it is "so severe or pervasive as to alter the conditions of [the victim's] employment and create an abusive work environment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998) (alteration in original) (citation and internal quotation marks omitted). To prevail on a hostile work environment claim, a plaintiff must establish (1) he suffered intentional discrimination because of a protected characteristic, (2) the discrimination was severe or pervasive, (3) the discrimination detrimentally affected him, (4) the discrimination would have detrimentally affected a reasonable person in like circumstances, and (5) a basis for respondeat superior liability. *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013). "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher*, 524 U.S. at 788.

Morozin has failed to allege he suffered severe or pervasive harassment during the course of his employment that led to a material change in its terms or conditions. Notably, Morozin's allegations either concern the suspension and termination of PHA employees other than Morozin

---

[10] Title VII and the PHRA are construed "consistently." *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 539 n.5 (3d Cir. 2006).

[11] Defendants also move to dismiss Count III insofar as it brings claims against Bard and Strauss in their individual capacities on the basis that Title VII applies to employers, and not individual employees. At oral argument, Morozin's counsel conceded this aspect of Defendants' motion. Therefore, the Court will dismiss Count III to the extent it seeks to hold Bard and Strauss liable as individuals under Title VII. Morozin will not be granted leave to amend because no amendment could cure the deficiency at issue here. *See Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061, 1077-78 (3d Cir. 1996) (finding "Congress did not intend to hold individual employees liable under Title VII").

9

without alleging any relationship to him, *see* Am. Compl. ¶ 172(a),[12] collective bargaining between PHA and Morozin's union without any nexus with Morozin's hostile work environment claim, *see id.* ¶ 172(d), or stem from his termination, *see id.* ¶ 172 (b)-(c), (e).[13] These allegations are insufficient to state a hostile work environment claim.

---

[12] Reprisals against third parties are actionable under a Title VII retaliation theory. *See Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 174 (2011) ("We think it obvious that a reasonable worker might be dissuaded from engaging in protected activity if she knew that her fiancé would be fired."). Assuming the same kind of conduct is actionable under a hostile work environment theory a proposition for which Morozin cites no authority, Morozin's averment is still inadequate. In *Thompson* the Supreme Court declined to identify "a fixed class of relationships for which third-party reprisals are unlawful," *id.* at 175, but made clear that a plaintiff must allege *some* kind of relationship, *see id.* (noting the termination of a "close family member" will "almost always" suffice and "inflicting a milder reprisal on a mere acquaintance will almost never do so"). Here, Morozin's allegation that PHA "suspended without pay and terminated others associating with the Plaintiff" is insufficient because it offers *no* detail about the relationship between Morozin and the others who suffered the reprisal, other than that they were "associating" with Morozin. Am. Compl. ¶ 172(a).

[13] In full, Paragraph 172 of the Amended Complaint states:

> Defendants Bard and Strauss in the presence of Plaintiffs' co-workers harassed and created a hostile work environment in violation of Title VII (42 USC 2000e) and the PHRA (43 P.S. § 951-963 et seq.) by taking the following material adverse employment action against the plaintiff and those that associated with the Plaintiff, such as coworkers, which action the totality of created a discriminatory hostile work environment and is illegal harassment or retaliation in employment:
>
> a) Suspended without pay and terminated others associating with the Plaintiff.
> b) Denied pre-termination Loudermill hearing process.
> c) Denied adequate or meaningful post-hearing process.
> d) Would not bargain in good faith or in accord with law. For example, PHA and Bard threatened or coerced Plaintiff's union, including its President. Bard said the Collective Bargaining Contract for a new police officer would continue to include the residency requirement that the union and existing PHA police officers sought removed, so they could live outside the City of Philadelphia and remain employed with PHA. Bard said he and PHA would not bargain or agree to remove the residency requirement unless all arbitrations were stopped and ended.
> e) Following termination, and even before discharge, the plaintiffs' pay was not paid in full, his pay was not calculated correctly, and

With respect to Morozin's allegations stemming from his terminations, the Amended Complaint raises issues analogous to those considered in *Roberts v. Health Partners Plans, Inc.*, No. 17-0297, 2017 WL 3310691, at *5 (E.D. Pa. Aug. 3, 2017). In that matter, the court considered whether the plaintiff stated a hostile work environment claim based on her termination and a denial of a claimed benefit. *Id.* The Court dismissed the claim, finding that "termination itself is not harassing conduct, and while it can be an instance of disparate treatment, it does not *create* a hostile work environment because it *eliminates* the existence of the work environment all together." *Id.* (emphasis in original). As to the denial of the claimed benefit, the court considered it to be an "isolated instance," which must meet the "'extremely serious' severity threshold in order to be actionable." *Id.* Having failed to establish that the denial was "[so] extreme as to amount to a change in the terms and conditions of employment," the Court dismissed the claim. *Id.* (quoting *Castleberry v. STI Grp.*, 863 F.3d 259, 264 (3d Cir. 2017)).

The allegations in the Amended Complaint are similar. Here, Morozin's allegations are either irrelevant, or stem directly from his termination. Because termination ends the work environment altogether, it cannot, itself, be considered harassing. *See id.* Although the Third Circuit Court of Appeals has not expressly adopted this position, the Court's decision accords with *Roberts* and the persuasive authority from outside this Circuit collected by *Roberts*. *See id.* at *5 n.4 (collecting cases). This common-sense view also accords with *National Railroad Passenger Corporation v. Morgan*, in which the Supreme Court recognized a difference, at least for statute of limitations purposes, between a discrete act of discrimination, such as termination, and a hostile work environment claim, which, by its "very nature involves repeated conduct." 536 U.S. 101,

---

the pay and benefits attendant to the PHA employment as a PHA police officer ended.

11

114-15 (2002). As a result, the Court finds that the Amended Complaint fails to state a claim for a hostile work environment.

In opposition to Defendant's motion to dismiss, Morozin raises a number of meritless arguments based on what appears to be a misperception of Defendants' motion. Defendants do not, as Morozin intimates, dispute that Morozin suffered an adverse tangible employment action, nor could they as Morozin clearly alleges he was terminated. *See, e.g.*, Am. Compl. ¶ 151. Rather, Defendants argue, and the Court agrees, that the Amended Complaint fails to allege any harassing conduct which preceded Morozin's separation from the work environment. Morozin's citation to authority which stands for the settled proposition that allegations of a constructive discharge can suffice to state a hostile work environment claim is therefore unresponsive and cannot save his inadequately pleaded claims.[14] Thus, the Court will dismiss Counts III and VI of the Amended Complaint to the extent they assert a hostile work environment claim under Title VII or the PHRA.

The Court next considers Counts III and VI to the extent they assert a retaliation claim. To make a prima facie case of retaliation under Title VII and the PHRA, a plaintiff must allege that "(1) [he] engaged in activity protected by Title VII; (2) the employer took an adverse employment action against [him]; and (3) there was a causal connection between [his] participation in the protected activity and the adverse employment action." *Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006); *see also Ahern v. Research Tech., Inc.*, 183 F. Supp. 3d 663, 670 (E.D. Pa.

---

[14] Morozin cites *Pa. State Police v. Suders*, 542 U.S. 129 (2004), *Suppan v. Dadonna*, 203 F.3d 228, 234-35 (3d Cir. 2000), and *Riding v. Kaufmann's Dep't Store*, 220 F. Supp. 2d 442, 463 (W.D. Pa. 2002)—each of which touches on constructive discharge. Morozin also cites *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997) and the Third Circuit Model Jury Instructions for hostile work environment claims. However, *Robinson* is unhelpful because it concerned quid pro quo sex discrimination and was later abrogated, *see Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006), and "the Model Instructions are not binding on . . . any court." *United States v. Maury*, 695 F.3d 227, 259 (3d Cir. 2012).

2016). The Court will grant the motion to dismiss on Counts III and IV because the Amended Complaint fails to adequately plead protected activity and a causal connection between such activity and an adverse employment action.

Protected activity falls into two categories: (A) participation in certain Title VII proceedings, and (B) opposition to employment discrimination. *See* 42 U.S.C. § 2000e-3(a) (making it unlawful for an employer "to discriminate against of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing under this subchapter."); *see also* 43 P.S. § 955(d). Conduct protected by Title VII includes "informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or society in general, and expressing support of co-workers who have filed formal charges." *Barber v. CSGB Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995) (quoting *Sumner v. United States Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990)).

Here, the Amended Complaint vaguely asserts Morozin opposed employment discrimination, assisted others in their opposition to employment discrimination, and participated in union activities designed to oppose employment discrimination. *See* Am. Compl. ¶¶ 48, 51, 52, 58-59, 75, 82-83, 150. However, the pleading is silent as to *how* Morozin went about this opposition, leaving the Court and Defendants to guess as to the means and manner of his alleged opposition, and thus his entitlement to Title VII protections. Although the applicable pleading standard is generous, it is not so generous as to relieve him of his obligations to include at least *some* detail about his claims. *See Santiago v. Citywide Cmty. Counseling Servs., Inc.*, No. 13-2114, 2013 WL 4051223, at *3 (E.D. Pa. Aug. 12, 2013) (noting that the Third Circuit has found

13

Title VII complaints sufficient where the plaintiff "pleaded how, when and where the alleged discrimination occurred."). Morozin has not done so with respect to the allegedly protected activity and Counts III and VI will, therefore, be dismissed on that basis.

Even assuming Morozin alleged a protected activity, Counts III and VI nevertheless fail because Morozin has not pled detail sufficient to support an inference that any protected activity he claims to have engaged in was causally related to an adverse employment action he suffered. Temporal proximity between the protected activity and adverse employment action is sufficient to establish causation only where it is "unusually suggestive." *Leboon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232-33 (3d Cir. 2007). Where it is not, the Court must consider whether there are allegations of "intervening antagonism or retaliatory animus, inconsistencies in the employer's articulated reasons for terminating the employee, or any other evidence in the record to support the inference of retaliatory animus." *Id.* at 232-33 (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279-81 (3d Cir. 2000)).

The Amended Complaint fails to raise an inference of causation. As an initial matter, the Amended Complaint is devoid of any dates for the legally significant conduct, which makes it impossible for the Court to determine whether the temporal proximity of his alleged protected activity and his termination is "unusually suggestive." For example, Morozin claims to have reported employment discrimination to Strauss in her capacity as PHA's Vice President of Human Resources, *see* Am. Compl. ¶ 53, but does not explain when he did so. Similarly, he alleges he opposed the allegedly discriminatory treatment of two PHA officers, but, again, fails to identify when he did or how he did. *See* Am. Compl. ¶ 75. As to his EEOC complaints (it is not clear how many Morozin may have filed), the Amended Complaint suggests that he filed a charge prior to his termination but does not allege how much time elapsed between whatever charges he filed and

his termination. *See* Am. Comp. ¶¶ 92-93, 152. In fact, the Amended Complaint *does not allege a termination date at all*. At best, Morozin alleges his termination came in "close proximity" to his protected activity. *Id*. ¶ 91. However, having failed to allege any dates, the Court rejects this bald legal conclusion. *See Fowler*, 578 F.3d at 210-11; *Oberdorf v. Penn Vill. Facility Operations, LLC*, No 15-1880, 2016 WL 1752732, at *4 (M.D. Pa. May 3, 2016) (dismissing complaint where plaintiff "[did] not provide any dates of his complaints or even the date of his termination").

Morozin's failure to plead temporal proximity is not, however, dispositive. As noted above, where the temporal proximity of protected activity and an adverse employment action is not unusually suggestive, the Court must analyze the Amended Complaint as a whole. *See Leboon*, 503 F.3d at 232-33. Of particular importance here, the Court "may look to the intervening period [between complaint and adverse action] for . . . circumstantial evidence [of a causal connection], such as inconsistent reasons given by the employer for terminating the employee or the employer's treatment of other employees, that give rise to an inference of causation when considered as a whole." *Marra v. Phila. Housing Auth.*, 497 F.3d 286, 302 (3d Cir. 2007) (internal citations omitted). As with much of the rest of the Amended Complaint, there is simply too little detail. At best, it features legal conclusions—which the Court need not accept, *see Iqbal*, 556 U.S. at 678—that individuals other than Morozin were fired or demoted after "oppos[ing] the perceived employment discrimination." Am. Compl. ¶ 54; *see id.* ¶ 55 Again, the Court is mindful of the lenient standard of review applicable to Morozin's Amended Complaint, but Morozin's failure to include more than the most general of allegations does not clear even this low bar. As a result, Counts III and VI are dismissed to the extent they assert retaliation claims.

The Court next considers Counts IV and V of the Amended Complaint, which allege retaliation claims under the federal Fair Labor Standards Act (FLSA) and the Pennsylvania Wage

Payment and Collective Law (WPCL), respectively.[15] *See* 29 U.S.C. § 215(a)(3). The FLSA makes it unlawful for any person:

> To discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

29 U.S.C. § 215(a)(3). To state a prima facie case of FLSA retaliation, the plaintiff must plead that "(1) the plaintiff engaged in protected activity, (2) the employer took an adverse employment action against him, and (3) there was a causal link between the plaintiff's protected action and employer's adverse action." *Preobrazhenskaya v. Mercy Hall Infirmary*, 71 F. App'x 936, 939 (3d Cir. 2003) (citing *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997)).

The Amended Complaint offers no additional details beyond the mere recitation of the elements of Morozin's claim. More specifically, all Morozin alleges is that he "made a complaint that his pay was not calculated correctly and he was not paid as required by law," Am. Compl. ¶ 192, "the defendant employer discharged the plaintiff after the complaint the pay was miscalculated," *id.* ¶ 193, and PHA "terminated the plaintiff within days of the complaint," *id.* ¶ 194. These barebones allegations do not establish a plausible right to relief. Most problematically, the lack of detail as to the nature of Morozin's internal complaint, i.e., when, how, or to whom it was made frustrates this Court's ability to determine whether it supports the inference that a "reasonable, objective person would have understood the employee to have put the employer on notice of an assertion of rights." *Kasten v. Saint-Gobain Performance Plastics*, 563 U.S. 1, 14

---

[15] In the Amended Complaint, Count IV also asserts a claim for miscalculated wages under the FLSA. However, at oral argument and in his opposition to Defendants' motion to dismiss, Morozin indicated he seeks to recover only for retaliation under the FLSA in Count IV and WPCL in Count V. Accordingly, the Court will treat Counts IV and V as retaliation claims.

(2011). As a result, the Court will dismiss Count IV for failure to state a claim for which relief may be granted.

The Court will also grant Defendants' motion to dismiss Count V of the Amended Complaint, which alleges retaliation in violation of the WPCL. Morozin's claim fails on this Count because the WPCL does not contain an anti-retaliation provision. *See Sondesky v. Cherry Scaffolding, Inc.*, No. 16-5667, 2017 WL 3873578, at *3 (E.D. Pa. Sept. 5, 2017) (citing *Donaldson v. Informatica Corp.*, 792 F. Supp. 2d 850 (W.D. Pa. 2011) and *Pease v. Faro Techs.*, No. 15-3586, 2016 WL 705240 (E.D. Pa. Feb. 22, 2016)). However, the Court will dismiss his claim without prejudice to reassertion as one for wrongful discharge. *See Cuthie v. J&J Material Handling Sys., Inc.*, No. 10-555, 2011 WL 13213861, at *2 (M.D. Pa. Mar. 15, 2011) (permitting amendment pursuant to Federal Rule of Civil Procedure 15 after finding "that a wrongful discharge claim premised on a termination in retaliation for filing a Pa WPCL claim may be asserted on grounds of public policy").

Finally, the Court turns to Defendants' motion pursuant to Rule 12(f) and will grant Defendants' request to strike Paragraphs 96 and 97, each of which concern the discovery conduct of PHA's counsel—who are not counsel in this matter—during the course of a separate litigation. Federal Rule of Civil Procedure 12(f) vests the Court with the authority to strike "redundant, immaterial, impertinent, or scandalous matter" from a pleading. The bar for relief pursuant to Rule 12(f) is high and striking is disfavored unless it is clear a movant is entitled to relief. *See Koepke v. Allstate Vehicle & Prop. Ins. Co.*, No. 16-4633, 2016 WL 6838429, at *2 (E.D. Pa. Nov. 21, 2016) (noting Rule 12(f) motions "are not favored and usually will be denied unless allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues of the case").

At issue here are two paragraphs of the Amended Complaint in which Morozin alleges that PHA's counsel in a separate matter were initially reluctant to produce transcript of the deposition of Bard in yet a third action, but ultimately turned the transcripts over in July, 2018. *See* Am. Compl. ¶ 96-97. Morozin claims these two averments are relevant to his retaliation and hostile work environment claims. The Court is not persuaded. Morozin has not cited any authority establishing the relevance of a defendant's counsel's initial refusal to turn over a deposition transcript, which it ultimately produced, in a separate litigation to a claim for retaliation or harassment, much less where, as here, there is no averment the plaintiff was even aware of the deposition, its content, or the dispute over its production. As a result, the Court finds Paragraphs 96 and 97 are immaterial to the Amended Complaint, and will strike them pursuant to Rule 12(f).

**CONCLUSION**

For the reasons stated above, the Court will grant Defendants' motion pursuant to Rule 12(b)(6), and dismiss Counts I, IV, and V in their entireties without prejudice, Count III to the extent it is brought against Bard and Strauss in their individual capacities with prejudice, and Counts III and VI to the extent they assert hostile work environment and retaliation claims without prejudice. The Court will also grant Defendants' motion to strike Paragraphs 96 and 97 pursuant to Rule 12(f).

An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, C.J.